## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MIKEL PERNELL,** )<br><br>Plaintiff, )<br><br>v. )<br><br>Chicago Police Officers **EDWARD FARLEY, Star No.**<br>**20643; THOMAS KELLY, Star No. 20229, ROBERT**<br>**LENIHAN, Star No. 20593, JAMES RILEY, Star No.**<br>**20250,** the **CITY OF CHICAGO,** a Municipal<br>Corporation, and unknown and unnamed officers, )<br><br>Defendants. ) | Case No. 03 CV 5316<br><br>Honorable Matthew<br>F. Kennelly |

### NOTICE OF FILING

TO:  Penelope George                    Stacy Benjamin
     Assistant Corporation Counsel       Assistant Corporation Counsel
     30 N. LaSalle Street, 900           30 N. LaSalle Street, Suit 1400
     Chicago, IL 60602                   Chicago, IL 60602

**PLEASE TAKE NOTICE** that on September 13, 2004, the undersigned filed with the
Clerk of this Court, **Plaintiff's Amended Complaint**, service of which is being made upon you.

_____
                                                        Edward M. Fox

ED FOX & ASSOCIATES
300 West Adams, Suite 330
Chicago, IL 60606
(312) 345-8877

### CERTIFICATE OF SERVICE

I, Laura Echavarria, a non-attorney, under penalty of perjury, state that on September 13,
2004, I mailed this notice to the above listed parties at above listed addresses by placing same in the
U.S. Mail located at 300 West Adams Street, Chicago, Illinois before 5 p.m. with proper postage
prepaid.

_____
                   Laura Echavarria

eof

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MIKEL PERNELL,** ) | |
| ) | |
| ) | Case No. 03 C 5316 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | AMENDED |
| Chicago Police Officers **EDWARD FARLEY, Star No.** ) | COMPLAINT FOR |
| **20643; THOMAS KELLY, Star No. 20229, ROBERT** ) | VIOLATION OF |
| **LENIHAN, Star No. 20593, JAMES RILEY, Star No.** ) | CIVIL RIGHTS AND |
| **20250,** the **CITY OF CHICAGO,** a Municipal ) | SUPPLEMENTAL STATE |
| Corporation, and unknown and unnamed officers, ) | CLAIMS |
| ) | |
| ) | **JUDGE KENNELLY** |
| ) | |
| ) | **DEMAND FOR** |
| Defendants. ) | **JURY TRIAL** |

### JURISDICTION AND VENUE

1.      This action arises under the United States Constitution and the Civil Rights Act of 1871 [42 U.S.C. Section 1983]. This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343 and 1331.

2.      Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

### PARTIES

3.      At all times herein mentioned, plaintiff Mikel Pernell ("Pernell"), was and now is a citizen of the United States, and resides within the jurisdiction of this court.

4.     At all times herein mentioned defendant, Detective James Riley, Star No. 20250 ("Riley") was a member of the City of Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the City of Chicago.  Riley is being sued in his individual/personal capacity.

5.     At all times herein mentioned defendant, Detective Thomas Kelly, Star No. 20229 ("Kelly") was a member of the City of Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the City of Chicago.  Kelly is being sued in his individual/personal capacity.

6.     At all times herein mentioned defendant, Detective Edward Farley, Star No. 20643 ("Farley") was a member of the City of Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the City of Chicago.  Farley is being sued in his individual/personal capacity.

7.     At all times herein mentioned defendant, Detective Robert Lenihan Star No. 20593 ("Lenihan") was a member of the City of Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the City of Chicago.  Lenihan is being sued in his individual/personal capacity.

8.     At all times herein mentioned, the City of Chicago was a municipal corporation operating under the laws of Illinois.

9.     At all times herein mentioned, all unknown and unnamed officers/detectives were members of the City of Chicago Police Department, and were acting under color of state law and as the employee, agent, or representative of the City of Chicago.  These officers/detectives will be named when their names are ascertained.

## FACTS

10.     On June 27, 2000, at approximately 6:00 to 6:30 p.m., two people, Valerie Davis and James Jones, were murdered while in their vehicle located in the vicinity of Bishop and 63rd street in Chicago, Illinois.  Somebody shot them at close range, killing them.

11.     Subsequent to this shooting, at approximately 9:30 p.m. plaintiff Pernell went to the vicinity of Ogden Park, at 64th and Ada to retrieve his car.   At this time and place, Pernell was arrested.  There was no probable cause for Pernell's arrest.

12.     Pernell was questioned by the arresting detectives, Riley and Kelly, and Pernell denied engaging in any shooting.  There were no witnesses identifying Pernell as the shooter of either Davis or Jones.

13.     Shortly after 9:30 p.m., Riley and Kelly transported Pernell to Area 1, Detective Division, and brought Pernell to a small room, roughly 8 by 8, with only a small metal bench and a ring on the wall within the room.  The room was lit and had working air conditioning.  The ring on the wall was used to fasten a  handcuff, attached to Pernell's left arm, to the wall.  There were no windows to the room.

14.     After bringing Pernell to the room, Riley and Kelly left, leaving Pernell by himself.

15.     Over the next 66-68 hours, or from the night of Tuesday June 27th to the late afternoon of Friday June 30th 2000,  Pernell was subjected to a psychological and physical enormously abusive set of conditions of confinement designed to elicit false statements from Pernell.  This included the following:

a.      Remaining handcuffed to the wall and being forced to remain with very limited movement until Thursday June 29th thus causing his left arm to go numb;

b.      Maintaining the interrogation room with the light on at all times, the handcuff in place as stated above, and the air conditioning uncomfortably cold (Pernell remained dressed only in shorts and a T-shirt) so that Pernell would be sleep deprived;

c.      Being deprived of all food and water from June 27th until the late afternoon of June 30th, other than a single bologna sandwich that was given to him on June 29th;

d.      Being deprived of access to a bathroom, except for a single occasion on June 29th (at which time Pernell also obtained a gulp of water), thus being forced to urinate on himself; and

e.      Being subjected to a beating on June 30th, by defendants Farley and Lenihan, in which they struck Pernell in the stomach with a fist numerous times, and struck Pernell with a telephone book to the back of the head numerous times.

16.      Shortly after being placed into the interrogation room, defendants Kelly and Riley came to the room. There, they questioned Pernell and told him to tell them (Kelly and Riley) "what I want to hear." Pernell responded by saying that he did not know what they were talking about.

17.      The event described in the previous paragraph occurred on several additional occasions with Riley and Kelly and two as yet unknown detectives, until Pernell was removed from his original room (for undisclosed reasons) by defendants Farley and Lenihan, to another room on Friday, June 30th. On each occasion until the last one with Farley and Lenihan on June 30th, Pernell indicated that he did not do any shooting.

18.        On June 30th, as noted in the preceding paragraphs, Farley and Lenihan moved Pernell to another room and subjected him to unnecessary and unreasonable force. At no time did Pernell use any force or resist anything done by these or any defendants.

19.        Also during the July 30th encounter with Farley and Lenihan, the latter defendants accused Pernell of shooting out of a vehicle and ordered Pernell to "cooperate with us or its going to get worse."

20.        During the time that he was being ordered to "cooperate" and while being beaten, Pernell repeatedly asked to see a lawyer. His requests were denied.

21.        Thereafter, solely as a result of the coercive interrogation process, Pernell indicated that he would do and say want the defendants Farley and Lenihan wanted him to do and say. Farley then read from a pad a series of false statements which he indicated he wanted Pernell to repeat. In sum and substance, these statements were to the effect that Pernell shot a gun out of a vehicle that he had been in on June 27th 2000 at approximately 6:00 p.m. Pernell indicated that he would repeat these statements for Farley.

22.        Subsequently, a prosecutor entered the room and eventually in the late afternoon of June 30, 2000, on a video, with Farley at this side, Pernell falsely stated, among other things, that he shot a gun out of the window of a car.

23.        Pernell did not know at this time about the murder of Davis and Jones (and, in fact, he did not "confess" to this murder). However, the defendants and the prosecutor put Pernell's false statement (to the effect that he shot out of a car) together with the murder of Davis and Jones, and used Pernell's statement to charge him with the murder of these two individuals.

24.        There were no witnesses or other physical evidence linking Pernell to the murders.

25.    Following Pernell's video taped statements, he was taken for the first time to a judge. However, this did not happen until roughly 90 hours after his arrest.

26.    At no time did any defendant read Pernell his *Miranda* rights. Pernell was also refused repeated requests while in custody to call his mother.

27.    Pernell was charged with, among other things, the murder of Davis and Jones. There was no probable cause to charge him with those murders or any other crime.

28.    The prosecution and continued prosecution of Pernell were without probable cause. Each of the individual defendants acted individually and in a conspiracy with one another to wrongfully confine plaintiff as alleged above, and to conceal from the court and plaintiff these facts along with exculpatory facts.

29.    Pernell, through his attorney, made a motion to suppress his statements during the course of the criminal proceedings against him. This motion was based upon all the facts of his incarceration, as stated in this complaint, leading up to and including his video taped statement. This motion was granted on February 26, 2003.

30.    In granting this motion, the Honorable Thomas R. Sumner stated, in part, that

> As far as I am concerned, 66 hours [of confinement prior to the video-taped statement] is too long, way too long. Now, I agree with counsel. Not one officer in that situation came in and could recall whether or not he took the defendant to the bathroom.

31.    Following the motion to suppress being granted, the charges against Pernell were dismissed on April 10, 2003. The case was terminated in Pernell's favor.

32.    The defendants and each of them, willfully, wantonly and maliciously concealed the fact that they had coerced false statements from Pernell by the use of psychologically coercive techniques and the use of excessive force. The defendants concealed this information and never disclosed any of this in their false police reports.

6

33.     Further, while Pernell's interrogations were taking place and thereafter, the defendants failed to follow up on other information revealing the person(s) involved in the shooting of Davis and Jones.

34.     Pernell in no way consented to any of the above described wrongful conduct.

35.     By reason of the above-described acts and omissions, Pernell sustained injuries, including but not limited to, physical injuries and psychological injuries. He also suffered great physical, mental and emotional pain and suffering as a result of his incarceration and the false charges placed against him. This is all to his damage in an amount to be ascertained.

36.     The aforementioned acts and omissions of defendants and each of them, except for the City of Chicago, were willful, wanton, malicious, oppressive and done with reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

37.     By reason of the above-described acts and omissions of defendants and each of them, Plaintiff was required to retain an attorney to institute, prosecute and render legal assistance to him in the within action so that he might vindicate the loss and impairment of his rights. By reason thereof, Plaintiff requests payment by Defendants, and each of them, of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

## COUNT I

## VIOLATION OF CIVIL RIGHTS – A CONFINEMENT IN VIOLATION OF

## PLAINTIFF'S DUE PROCESS RIGHTS

38.    Plaintiff incorporates and alleges paragraphs 1-37 as though fully alleged at this place.

39.    The individual defendants and each of them, individually and in a conspiracy with one another, subjected the plaintiff, Mikel Pernell, to conditions of confinement, prior to his video-taped statement, that were unlawful, unreasonable, and shocked the conscience. These psychological conditions, as stated above, included lengthy confinement without food, without bathroom access, continuous handcuffing to a wall , and continuous light and air conditioning without adequate clothing thus preventing the ability to reasonably sleep.

40.    These conditions also included physical coercion, the failure to give Miranda warnings, and holding plaintiff *incommunicado* for a lengthy period of time.

41.    Defendants' purpose in confining the plaintiff as they did was malicious and for the purpose of extracting false statements from him so that he would falsely implicate himself in a crime he did not commit.

42.    On April 10, 2003, all the criminal charges against the plaintiff were dismissed, and thus, at that point, this complaint would not and could not undermine the validity of the potential criminal conviction for murder and/or related crimes.

43.     Each of the individual defendants' conduct was in violation of the Fourth, Fifth, Sixth, and/or Fourteenth Amendments to the United States Constitution and laws enacted thereunder.  As a result, these defendants are liable to the plaintiff under, but not limited to, 42 U.S.C. §1983.

## COUNT II

## VIOLATION OF CIVIL RIGHTS – FAILURE TO PROMPTLY PROCESS PLAINTIFF FOLLOWING HIS ARREST

44.     Plaintiff incorporates and alleges paragraphs 1-37 as though fully alleged at this place.

45.     Plaintiff was held for roughly 66-68 hours before he was coerced to make false statements implicating himself in criminal activity.

46.     Plaintiff was held for roughly 90 hours before he was brought in front of a judge.

47.     On April 10, 2003, all the criminal charges against the plaintiff were dismissed, and thus, at that point, this complaint would not and could not undermine the validity of the potential criminal conviction for murder and/or related crimes.

48.     This delay in and of itself is a violation of the the Fourth and/or Fourteenth Amendment to the United States Constitution requiring a prompt judicial determination of probable cause following a warrantless arrest.  As a result, the individual defendants and each of them are liable under 42 U.S.C. §1983.

## COUNT III

## SUPPLEMENTAL STATE CLAIM – MALICIOUS PROSECUTION

49.     Plaintiff incorporates and alleges paragraphs 1-37 as though fully alleged at this place

50.     Each of the individual defendants, individually and/or in a conspiracy, caused, initiated, and continued a malicious prosecution of the plaintiff without probable cause.

51.     The criminal proceedings terminated in plaintiff's favor on April 10, 2003.

52.     The defendants and each of them acted maliciously in initiating and in continuing the prosecution of the plaintiff.

53.     Plaintiff was injured as set forth above.


## COUNT IV

## SUPPLEMENTAL STATE CLAIM – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54.     Plaintiff incorporates and alleges paragraphs 1-37 as though fully alleged at this place

55.     Each of the defendants, individually and in a conspiracy engaged in extreme and outrageous behavior against the plaintiff by engaging in grossly wrongful interrogation tactics designed to elicit false statements.  Their acts and the concealment of their acts until the termination of proceedings against plaintiff were extreme and outrageous.

56.     Each of the defendants are thus liable for the intentional infliction of emotional distress caused by their actions as set forth above.

## COUNT V

## SUPPLEMENTAL STATE CLAIM – RESPONDEAT SUPERIOR AGAINST THE CITY

## OF CHICAGO

57.     Plaintiff incorporates and alleges paragraphs 1-37 as though fully alleged at this place

58.     Each of the individual defendants were at all times relevant to this action employees and agents of the City of Chicago. Each of the above-named and unnamed defendants was acting within the scope of his employment when he engaged in the actions described in this complaint as these allegations relate to Counts III and IV above. Thus, The City of Chicago is liable for the acts of these individuals under the doctrine of *respondeat superior*.

## COUNT VI.

## VIOLATION OF CIVIL RIGHTS – PLAINTIFF AGAINST THE CITY OF CHICAGO

59.     Plaintiff hereby incorporates and re-alleges paragraphs one 1 through 37 hereat as though fully alleged at this place.

60.     During all relevant times, the City of Chicago knowingly, and with willful and deliberate indifference to the Constitutional rights of citizens, maintained and permitted a widespread custom and practice of permitting the occurrence of the types of wrongs set forth in the following paragraph.

61.     During all relevant times, the City of Chicago maintained a widespread custom and practice of not promptly obtaining a probable cause or preliminary hearing for arrestees of felony crimes.  In fact, it was the widespread custom, practice and belief that officers and detectives could and did have 72 hours (known as a "rule of thumb") to simply decide to charge and then "book" or process the arrestee.  Officers and detectives also believed and customarily practiced that longer than 72 hours could be taken for such things as further investigations.  After booking of an arrestee, additional time was then customarily taken (beyond 72 or more hours) before the arrestee was brought before a judge for a probable cause or preliminary hearing.

62.     Further, during all relevant times, the City of Chicago failed to train its officers and detectives to obtain a prompt probable cause or preliminary hearing, and/or affirmatively trained and instructed officers and detectives that it was appropriate not to require a probable cause or preliminary hearing before 72 hours had elapsed after the suspect had been arrested.

63.     Plaintiff alleges that these customs, policies and training, described above, were the moving force behind the violations of the Plaintiff's rights.  During all relevant times, the law required that officers obtain probable cause determinations from a neutral magistrate for a felony arrestee within 48 hours of arrest.  Based upon the principles set forth in <u>Monell v. New York City Department of Social Services</u>, the City of Chicago is liable for all the harm done to plaintiff as set forth above.

64.     As a result of not timely obtaining a timely probable cause hearing, plaintiff was injured in all the ways set forth above.

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

BY: _____

Edward M. Fox


ED FOX & ASSOCIATES
Attorneys for Plaintiff
300 West Adams Street
Suite 330
Chicago, Illinois 60606
(312) 345-8877

## RELIEF REQUESTED

WHEREFORE, plaintiff, Mikel Pernell, by and through his attorneys, ED FOX & ASSOCIATES, requests judgment on each Count as follows against each and every Defendant:

1. That the Defendants and each of them be required to pay Plaintiffs' general damages, including emotional distress, in a sum to be ascertained;

2. That the Defendants be required to pay Plaintiffs' special damages in a sum to be ascertained;

3. That the Defendants be required to pay Plaintiffs' attorneys fees pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any other applicable provision;

4. That each of the individual Defendants be required to pay punitive and exemplary damages in a sum to be ascertained;

5. That all Defendants be required to pay Plaintiffs' costs of the suit herein incurred; and

6. That Plaintiff has such other and further relief as this Court may deem just and proper.

Dated: August 20, 2004

BY: _____
Edward M. Fox